trial of and full hearing upon the motion for a new trial.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the ruling of the district judge in refusing to grant defendant a new trial and the sentence of the court be set aside, and it is now ordered, adjudged, and decreed that the motion for a new trial be reinstated, and a hearing and trial had on said motion.

The cause is remanded to the district court for further proceedings according to law.

---

(50 South. 783.)

No. 17,751.

ISRAEL v. STATE NAT. BANK OF NEW ORLEANS.

In re ISRAEL.

(Nov. 15, 1909.    Rehearing Denied Dec. 13, 1909.)

1. BANKS AND BANKING (§ 148*)—DEPOSITS—PAYMENT OF FORGED CHECKS—LIABILITY TO DEPOSITOR—NEGLIGENCE OF DEPOSITOR.

Plaintiff's checks were always signed by himself and written by himself or his clerk. On November 21, 1905, his passbook was returned with the checks paid to that date, and three of the canceled checks, which were payable to bearer, and were not shown by the stubs of his checkbook, were in a handwriting entirely different from that of plaintiff or his clerk, except the signature, which was an exact imitation of plaintiff's signature. Plaintiff discovered these facts at the time, but did not notify the bank, claiming at trial that he thought the fact that the checks were not shown in his stubs might be explained by his forgetting to enter them, and he was not sure at the time that they were forged. On January 25, 1906, 18 other checks forged in the same manner were returned to him, when he notified the bank and sued to recover the entire amount of the forged checks. Held, that the fact that the checks, except the signature, were in a strange handwriting, was sufficient to arouse plaintiff's suspicion and require him to inform the bank, and he could not recover the amount of the forged checks paid after November 21st.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 442, 443; Dec. Dig. § 148.*]

2. BANKS AND BANKING (§ 148*)—DEPOSITS—PAYMENT OF FORGED CHECKS—LIABILITY—FACTS PUTTING UPON INQUIRY — ABSENCE OF DATE.

That the year was not filled out on a forged check dated "New Orleans, La., Dec. 4, 190 ,"

was not sufficient to put the bank upon inquiry so as to make it liable for its payment.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 439; Dec. Dig. § 148.*]

Action by Jacob Israel against the State National Bank of New Orleans. Judgment for plaintiff for partial relief, and he brings writ of review. Affirmed.

Lazarus, Michel & Lazarus, for petitioner. W. S. Parkerson, for defendant.

PROVOSTY, J.    The plaintiff was a depositor in the defendant bank. On November 21, 1905, his passbook was balanced and returned to him with those of his checks which had been paid and canceled up to that date. Among these checks were three which were forged, aggregating $90. Plaintiff's checks were never signed by any other person than himself, and were always written either by himself or by his clerk. The written part of these forged checks, except the signature, was in a handwriting distinctly different from plaintiff's and that of his clerk. The checks were payable "to bearer." The signatures were so well imitated as to defy detection. Plaintiff examined the returned checks, and discovered that the three in question were not in his handwriting nor in that of his clerk, and that they did not appear on the stubs of his checkbook. He did not notify the bank of the forgeries. Two months later, on January 25, 1906, the passbook was again balanced and returned to him with his canceled checks. In the meantime 18 other forged checks, aggregating $763, with signatures equally well imitated, had been paid by the bank; and then, only, plaintiff notified the bank.

The present suit is for the recovery of the entire amount paid by the bank on the forged checks. The district court gave judgment for $90, the amount of the three checks which accompanied the passbook on its first return to plaintiff, and rejected plaintiff's demand for the amount of the forgeries subsequently

paid. The Court of Appeal affirmed this judgment, except that it added $10 to it for one forged check which was paid the day itself of the first return of the passbook and before plaintiff could have given notice of the forgeries. The case is here on writ of review to the Court of Appeal, parish of Orleans.

Plaintiff quotes extracts from certain decisions, and also from text-books, founded, doubtless, on the same decisions, to the effect that the depositor in a bank owes no duty to the bank to examine his passbook and returned checks with a view to the detection of forgeries, but has the right to assume that the bank before paying the checks made sure that the signatures were genuine. Those decisions are reviewed by the Court of Appeals of New York in the case of Critten v. Chemical National Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529, and by the Supreme Court of the United States in the case of Leather Mfg. Bank v. Morgan & Co., 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811, and the more conservative conclusion reached that:

A depositor in a bank, who sends his passbook to be written up and receives it back with entries of credit and debits and his paid checks as vouchers for the latter, is bound personally, or by an authorized agent, and with due diligence, to examine the passbook and vouchers, and to report to the bank without unreasonable delay any errors which may be discovered in them; and if he fails to do so, and the bank is thereby misled to its prejudice, he cannot afterwards dispute the correctness of the balance shown by the passbook."

Upon the facts of the instant case, plaintiff did not exercise this due diligence. He failed to report to the bank the forgeries which had revealed themselves to him by the return of his checks on November 21st. He cannot recover therefore the amounts which were subsequently paid. Had he made the report, the bank would have been put on its guard.

Plaintiff makes a feeble effort to absolve himself from negligence in the premises by saying: That he was not sure than the three checks were forgeries; that he would sometimes draw checks away from his place of business and forget to enter them on the stubs of his checkbook; that he was not sure the absence of these particular checks from the stubs of his checkbook might not be accounted for in that way; that during the two months which elapsed before notice was given to the bank, during which time the bank was paying the other checks similarly forged, he was searching in his mind and trying to remember whether he had drawn these three checks or not. But how could plaintiff not have known that the checks were not drawn by him when in all but the signature they were distinctly in a strange handwriting? This alone was enough to arouse his suspicion and put him under the necessity of giving some warning to the bank.

One of the subsequently paid checks, that of December 4, 1906, bears date as follows:

"New Orleans, La., Dec. 4, 190 ."

Plaintiff argues that a check must be dated, and that the defect in the dating of this check should have put the bank upon inquiry, and that if the bank had made inquiry the forgery would have been detected and all the subsequent forgeries prevented.

We fail entirely to see why the absence of the "5" in "1905" should have put the bank upon inquiry. This looseness in the confection of the check was better calculated to lull than to arouse suspicion. The trouble with the check was, not that it was not dated, but that it was forged. The absence of a date could be material only if the check had been genuine, but had been left undated in order that it might not be payable, and the bank had nevertheless paid it and a loss had resulted. This is not the case here. In the instant case the absence of a date would have been utterly immaterial if the check had been genuine.

The judgment of the Court of Appeal is affirmed.